FILED

2005 Apr-27  AM 10:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| **KH OUTDOOR, L.L.C.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO. CV-03-HS-3278-S** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CITY OF TRUSSVILLE,** | ) | |
| **ALABAMA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF OPINION

Before the Court is the Defendant's motion for summary judgment (doc. 12) and the Plaintiff's cross-motion for partial summary judgment (doc. 19). These motions were opposed, fully briefed, and came before the Court for a hearing on March 2, 2005. They now are ripe for decision.

## FACTS

The facts of this case are not in dispute. The Plaintiff KH Outdoor, LLC, is a Georgia based out-door advertising company. On October 30, 2003, KH Outdoor submitted eleven applications to construct outdoor advertising signs at various locations within the Trussville city-limits. On October 30, 2003, two of the applications initially were rejected on the ground that they sought to erect signs

outside of the Trussville city limits.  However, this initial conclusion turned out to be mistaken, and the applications were resubmitted.

On or about November 3, 2003, and November 14, 2003, the City denied each permit application, citing the Trussville City Ordinance (hereinafter the "Ordinance") regarding the public display of signs in Trussville.  *See* Ordinance 200-03A-P.Z, Article XI-XII.[1]

On December 10, 2003, the Plaintiff commenced the instant civil action. Plaintiff brings this action under 42 U.S.C.A. § 1983, alleging in thirteen counts that the Defendant City of Trussville's sign ordinance is unconstitutional and that the City's denial of its permit applications violates KH Outdoor's rights under the First and Fourteenth Amendments of the United States Constitution.

In the Plaintiff's cross-motion for summary judgment, Plaintiff seeks a judgment in its favor on its claims, and requests injunctive relief, nominal damages, and attorney's fees under 42 U.S.C.A. § 1988 and Alabama law.  In the Defendant's

---

[1]At the hearing on the instant motions, the parties indicated that there was a dispute as to which version of the Ordinance was in effect at the time that KH Outdoor submitted its applications.  This dispute seemed to be based on the fact that the City of Trussville submitted a copy of the Ordinance that omitted many even-numbered pages.  After the motion hearing, both parties submitted versions of what they deemed to be the definitive versions of the Ordinance. The only identified difference between these two versions was that the version submitted by the City included demonstrative illustrations.  (*See* doc. 35.)  The Court finds that this difference does not relate to a fact material to this litigation and that no genuine dispute of material fact exists regarding the content of the Trussville Ordinance.

motion for summary judgment, the Defendant requests judgment on the grounds that (1) the Plaintiff lacks standing and (2) the Trussville sign ordinance is constitutional.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *Id.* at 324.

All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence

is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

## I.      Standing

The Plaintiff challenges the Ordinance quite broadly, urging the Court to review and strike down several provisions—referred to herein as "collateral provisions"—of the Ordinance that both parties agree were not and do not apply to KH Outdoor's applications.[2] Consequently, the first task for the Court is to determine which challenges the Plaintiff has standing to bring.

The standing question is complicated by disunity in the Eleventh Circuit's jurisprudence.[3] However, the Court finds that it can avoid most of the complications

---

[2]The collateral provisions include § 3.0(D), which bans flashing or animated signs; § 3.0(L), which regulates temporary political signs; § 19, which pertains to signs on residential properties; and § 23.3, which provides for an appeal after a denial of a permit application.

[3]The split is as follows: At least three Eleventh Circuit cases have held that under the overbreadth doctrine of the First Amendment, plaintiffs have standing to challenge provisions of sign ordinances that were not applied directly against them. *See Café Erotica of Fla., Inc. v. St. Johns County*, 360 F.3d 1274, 1281 (11th Cir. 2004) (finding that two plaintiffs had standing to challenge an ordinance as an invalid prior restraint and as content-discriminatory despite the fact that both plaintiffs erected signs without applying for permits); *Granite State Outdoor Adver., Inc. v. City of St. Petersburg*, 348 F.3d 1278, 1280 n.2 (11th Cir. 2003) (affirming the district court in striking down three provisions that did not apply to the plaintiff); *Nat'l Adver. Co. v. City of Ft. Lauderdale*, 934 F.2d 283, 285 (11th Cir. 1991) (allowing a plaintiff to challenge various provisions of an ordinance that banned all billboards). In a fourth case, an Eleventh Circuit panel held that, even after relaxing the standing requirements under the First

created by the intra-circuit split by following the Eleventh Circuit's approach in *City of Mary Esther* and *City of Sunrise*. *See, respectively,* 397 F.3d 943, 950-51 (11th Cir. 2005); 371 F.3d 1320, 1349 (11th Cir. 2004). In these cases, rather than examining the question of standing, the Eleventh Circuit reviewed whether the collateral provisions challenged by the plaintiff were severable from the remainder of the statute. *Id.* Upon finding that the provisions were severable, the Eleventh Circuit declined to review the merits of the plaintiff's challenge to the collateral provisions on the ground that any ruling produced would be advisory in nature. *See City of Sunrise*, 371 F.3d at 1349 ("[E]ven if we were to rule the remaining challenged portions to be unconstitutional, it would not make a whit of difference to the [Plaintiff].… We thus have no reason to decide on their constitutionality ….").

Applying that approach here, the Court first will examine the question of

---

Amendment's overbreadth doctrine, a plaintiff only has standing to challenge those provisions that caused the plaintiff an injury-in-fact. *See Granite State Outdoor Advertising, Inc. v. City of Clearwater,* 351 F.3d 1112, 1116-17 (11th Cir. 2003). Two other Eleventh Circuit panels followed a third approach. In *Seay Outdoor Advertising, Inc. v. City of Mary Esther* and *Coral Springs Street Systems, Inc. v. City of Sunrise*, the Eleventh Circuit ruled that the plaintiff lacked standing to challenge collateral provisions only after concluding that those provisions were severable. *See, respectively,* 397 F.3d 943, 950-51 (11th Cir. 2005); 371 F.3d 1320, 1349 (11th Cir. 2004). Because these collateral provisions could be severed from the provision that actually applied to the plaintiff, these panels concluded that any ruling by the court on these provisions would be advisory in nature. *See City of Sunrise,* 371 F.3d at 1349. However, the Eleventh Circuit's approach in *City of Mary Esther* and *City of Sunrise* conflicts with the approach set out in *National Advertising Company*, in which the Eleventh Circuit directed the district courts first to "determine[] that some or all of the challenged provisions are unconstitutional . . . then determine whether or not those provisions are severable from the remainder of the sign code." *Nat'l Adver. Co.*, 934 F.2d at 286.

severability before ruling on the issue of standing.

## II.   Severability

Severability is a question of state law.  *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 521 n.26 (1981).  Alabama law on severability holds that courts are to "strive to uphold acts of the legislature. The inclusion of a severability clause is a clear statement of legislative intent to that effect ...."  *City of Birmingham v. Smith,* 507 So.2d 1312, 1315 (Ala. 1987).

Section 2.0, article VII, of the Trussville Ordinance, entitled a "Savings Clause," provides that

> If any section, clause, provision or portion of this ordinance shall be held to be invalid or unconstitutional by any court of competent jurisdiction, such holding shall not affect any other section, clause provision or portion of this ordinance which is not in and of itself invalid or unconstitutional.

Trussville Ordinance, art. VII, § 2.0.  As indicated by *City of Birmingham*, this provision strongly indicates that all collateral provisions of the Ordinance that the Plaintiff attacks are severable and therefore their unconstitutionalitly will not require that the entire Ordinance be struck down.  *See* 507 So.2d at 1315.  Because the Plaintiff's attacks on the collateral provisions of the Ordinance will not result in the Plaintiff obtaining relief, the Court need not entertain them.  Accordingly, the Defendant's motion for summary judgment as to Counts VII, VIII, IX, and X are due

to be granted as Plaintiff's claims contained in these counts relate to collateral provisions that are severable and therefore cannot result in the Plaintiff obtaining relief.

## III.   Whether the Ordinance is Content Discriminatory

The following sections of the Trussville ordinance were applied to KH Outdoor. Section 20.0 governs where billboards are allowed and sets regulations that they must conform to. As will be explained below, section 20.0 was the provision cited by Trussville in its explanation for why it denied KH Outdoor's applications. The term "billboards" is defined in section 2.0 of the Ordinance.[4]  This provision necessarily applied in order to place KH Outdoor's applications under section 20.0. Section 4.0 is a list of signs that are exempt from the Ordinance's provisions. As exemptions to the application of the Ordinance, these provisions necessarily had to be considered as a threshold matter prior to applying the Ordinance at all. Section 3.0

_____

[4]Defendant appears to take the position that the definition section of the Ordinance was not applied to the Plaintiff and therefore argues that the Plaintiff lacks standing to challenge any definition contained in the Ordinance. This position is untenable because the Ordinance can hardly be applied without reference to what the words of any particular section mean. Indeed, in *ADvantage Advertising, L.L.C. v. City of Pelham*, which the Defendant cites in support of its standing arguments, Judge Proctor clearly ruled that the Plaintiff had standing to challenge not only the specific section of the Ordinance that was applied to it, but also the sections of the Ordinance that defined the words in the sections that were applied to the plaintiff. *See ADvantage Adver., L.L.C. v. City of Pelham*, CV 02-P-2017-S, 22 (N.D. Ala. Sept. 10, 2004) ("[A]Dvantage has standing to challenge only the constitutionality of §§ 5(d) and 6 of the Sign Ordinance (*as defined by § 2*) as applied to it and under the overbreadth doctrine….) (emphasis added).

is a set of generally applicable rules.  Only section 3.0(O) actually applied to KH Outdoor's applications.  Section 3.0(O) prohibits all off-premise signs except as permitted in section 20.0.  Section 9.0 governs what signs can be erected in areas zoned as C-3 Tourist Commercial Districts.  C-3 Tourist Commercial Districts are the only districts in which billboards can be erected, subject to section 20.0

KH Outdoor argues that there is a genuine question of fact as to why its permit applications were denied.  However, the denial letter that Trussville sent to KH Outdoor adequately states that its applications were denied because (1) pursuant to section 20.0, billboards are restricted to areas along interstate highways and KH Outdoor sought to erect nine billboards along several ordinary roads; (2) pursuant to section 20.0, billboards are not permitted to be within 1500 feet of each other and KH Outdoor sought to erect two billboards along Interstate 59 that were within 1500 of another billboard; and (3) one billboard was sought beyond Trussville's city limits.

KH Outdoor argues that Trussville's Ordinance discriminates on the basis of content in how it defines billboards.  Section 2.0 defines a billboard as "[a]n off-premise sign which directs attention to a business, commodity, service, or entertainment, sold or offered for sale at a location other than the premises on which said sign is located."  Under this definition, a billboard is defined as a sign having solely commercial content.  Consequently, in order to classify a sign as a billboard,

8

Trussville actually must know whether the sign has commercial rather than noncommercial content.  If a sign has noncommercial content, then it does not qualify as a billboard.

Merely classifying a sign on the basis of its content is not, by itself, a problem.  In this case, however, the content distinction entails that the Ordinance treats commercial speech more favorably than noncommercial speech, which includes speech that is political, religious, and ideological.  The first problem is that billboards are the largest signs allowed under the Ordinance.  Because noncommercial messages are excluded from the definition of a billboard, noncommercial messages cannot be as large as commercial messages in those areas where billboards are allowed.  Thus, without considering any other provisions, it can be determined that the Ordinance discriminates against noncommercial speech.[5]  It is a well-established violation of the First Amendment to privilege commercial speech over noncommercial speech.  *See*

---

[5]Under the sign ordinance at issue in *Southlake Property Associates v. City of Morrow*, 112 F.3d 1114, 1119 (11th Cir. 1997), the Eleventh Circuit held that noncommercial signs could be construed as on-premise signs.  *City of Morrow* involved a total ban on off-premise signs.  By defining noncommercial signs as on-premise, the Eleventh Circuit removed them from the scope of the ban. Given the very specific definition of on-premise signs in Trussville's Ordinance, this saving construction is not plausibly available here. Nevertheless, even if noncommercial signs were construed to be on-premise signs, the Ordinance still would be discriminatory because on-premise signs cannot be as large as billboards.  *Compare* Ordinance, art. 6, § 10.0(A) (limiting permanent pole-mounted on-premise signs to thirty-five feet in height and 120 feet in surface area) *with* Ordinance, art. 6, § 20.0(E)(3) (permitting billboards to be forty feet in height and 800 feet in surface area).

*Metromedia*, 453 U.S. at 513 ("Insofar as the city tolerates billboards at all, it cannot choose to limit their content to commercial messages; the city may not conclude that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of noncommercial messages."); *Café Erotica*, 360 F.3d at 1291 (same).

The second problem is that the Ordinance prohibits certain categories of noncommercial signs—including political and ideological signs—that are permanent. Section 1.0 of the Ordinance provides that "[i]f not otherwise stated, any sign not specifically permitted in a zoning district as provided under the applicable section, shall be prohibited in that district." Under this rule, any sign not expressly allowed is banned. As discussed above, the Ordinance defines billboards as off-premise signs having exclusively commercial content.[6]   Similarly, section 2.0 defines an on-premise sign as "[a] sign which advertises only goods, services, facilities, events or attractions available on the premises where located, or identifies the owner or directs traffic on the premises." The only provision of the Ordinance allowing political signs applies only to temporary signs. *See* Trussville Ordinance, art. VI, § 4.0(L) (exempting "[t]emporary, non-illuminated political signs and campaign posters" from

---

[6]The Ordinance's definition of an off-premise sign is materially identical to its definition of a billboard. *See* Trussville Ordinance, art. VI, § 2.0.

the Ordinance and setting size limitations).  Consequently, permanent political and ideological signs are not expressly allowed under any provision of the Ordinance. Under section 1.0, therefore, they are prohibited.

At oral argument, counsel for the City of Trussville confirmed the discriminatory nature of the Ordinance during the following exchange:

| | |
|---|---|
| THE COURT: | So where is an off premise sign that is not commercial expressly permitted in the Ordinance? |
| MR. OWENS: | Well, I don't think it is…. |
| …. | |
| THE COURT: | But you've agreed with me that there's no place in the Ordinance that permits off premise billboards that have no commercial content? |
| MR. OWENS: | Right. |

Hearing Trans. at 21, 22 (March 2, 2005).

Because permanent commercial signs are allowed but permanent noncommercial signs are not, the Ordinance unconstitutionally favors commercial speech over noncommercial speech.  This is plain and well-established violation of the Constitution.  *See Metromedia*, 453 U.S. at 513; *Café Erotica*, 360 F.3d at 1291.

Having concluded that the Ordinance unconstitutionally discriminates on the basis of content, the Court must determine which provisions of the Ordinance must be struck to eliminate the unlawful discrimination.  Based upon its review of the Ordinance, the Court concludes that the discriminatory aspects of the Ordinance can

be remedied by striking out the provision in section 1.0 of the Ordinance that prohibits any sign "not specifically permitted in a zoning district as provided under the applicable section." With this section excised, the Ordinance no longer contains any provisions governing permanent signs with noncommercial content, and therefore is utterly permissive towards them. Because, with this provision removed, the Ordinance allows for religious, political, or ideological signs in nearly every area of the city without restriction, any discriminatory disadvantage imposed upon noncommercial signs is removed.[7]

Accordingly, the Court will **GRANT** the Plaintiff's motion for summary judgment and **DENY** the City's motion for summary judgment with respect to Count IV, the claim that the Ordinance is unconstitutionally content-discriminatory, and will enter a permanent injunction barring the City of Trussville from applying or enforcing in any manner the provision of section 1.0 of the Ordinance that provides as follows: "If not otherwise stated, any sign not specifically permitted in a zoning district as provided under the applicable section, shall be prohibited in that district."

-----

[7]Because, under this remedy, the Ordinance will cease to regulate noncommercial speech, Count III of the Complaint, which asserts that the Ordinance favors some noncommercial speech over other noncommercial speech, is moot. Accordingly, the Court shall grant the Defendant's motion for summary judgment on Count III and deny summary judgment to the Plaintiff on that count.

## IV.   Prior Restraint

KH Outdoor argues that the Ordinance amounts to an unconstitutional prior restraint on speech.  When it comes to licensing schemes, the general rule is that cities must "establish neutral criteria to insure that the licensing decision is not based on the content or the viewpoint of the speech considered."  *See City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 760 (1988).

KH Outdoor complains that many aspects of the Ordinance demonstrate the lack of objective criteria to guide the official's discretion.  Most of KH Outdoor's complaints of unbridled discretion lack substance.  For example, KH Outdoor's complaint that the Trussville clerk mistakenly identified two of its applications as relating to locations beyond Trussville's city limits is frivolous because a city's corporate boundaries are a quintessential example of employing objective criteria, and not unbridled discretion, in the evaluation of a permit application.  However, KH Outdoor correctly identifies that the Ordinance sets no time period within which officials must complete their review of the permit applications.  Addressing this argument poses two questions.

The first question is whether KH Outdoor has standing to attack the Ordinance for its lack of time limits.  The City of Trussville made its determination on all of KH Outdoor's permit applications within eleven days.  The Court finds that this is a

13

reasonable time.  Consequently, KH Outdoor can challenge the lack of specific time limits only under an overbreadth theory, and not as applied.  Some decisions of the Eleventh Circuit have held that a party who is not actually aggrieved by a statute's lack of time limits lacks standing to challenge that aspect of the statute.  *See City of Clearwater*, 351 F.3d at 1117.  Other opinions have permitted such challenges.  *See Café Erotica*, 360 F.3d 1284.  Thus, to answer the question of whether KH Outdoor has standing to challenge the Ordinance's lack of time limits, the Court must determine which opinion of the Eleventh Circuit is authoritative under the Circuit's "earliest case" rule.

The "earliest case" rule provides that, because one panel of the Eleventh Circuit may not overrule a previous panel's decision, a prior panel's decision controls over a subsequent panel's contrary decision.  *See Morrison v. Amway Corp.*, 323 F.3d 920, 929 (11th Cir. 2003).  Stated more plainly, when two cases conflict, the earliest case governs.  This raises the question of which panel opinion constitutes the earliest case.  The Court finds that *National Advertising Co. v. City of Fort Lauderdale*, 934 F.2d 283, 285 (11th Cir. 1991), the earliest case cited to the Court by the parties, is binding as against all subsequent contrary decisions under the Eleventh Circuit's "earliest case" rule.  *National Advertising Co.* establishes a plaintiff's standing under the overbreadth doctrine to challenge ordinance provisions that were not applied

14

against the plaintiff.  *See* 934 F.2d at 285-86 (holding that a plaintiff had standing to attack an entire ordinance including portions of the ordinance not applied to the plaintiff).

When the licensing scheme is content-neutral, all that is required is "adequate standards to guide the official's decision and render it subject to effective judicial review." *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 324 (2002).  However, where a statute discriminates on the basis of content, the safeguards from *FW/PBS, Inc. v. Dallas* apply.  *See* 493 U.S. 215 (1990).  Under *FW/PBS*, the licensing scheme must "(1) ensure that permitting decisions are made within a specified time period . . . . and must (2) avoid 'unbridled discretion' in the hands of a government official." *See Café Erotica*, 360 F.3d at 1282.

Although the Court concluded that the Ordinance is content-discriminatory when it includes section 1.0, the Court already has determined to enjoin the enforcement of that provision.  To avoid providing redundant or unnecessary relief, therefore, the Court will conduct its analysis of whether the statute constitutes an invalid prior restraint as if the Ordinance does not include section 1.0.  So viewed, the Ordinance is content-neutral.

When an ordinance is content-neutral, the law is clear that the absence of specific time limits is not enough to compel the conclusion that officials lack

15

adequate standards to guide their decision making.  *See City of St. Petersburg*, 348 F.3d at 1282 (holding that a lack of time limits in a content-neutral ordinance does not equate to unbridled discretion absent evidence of a pattern of unlawful favoritism) (citing *Thomas v. Chicago Park Dist.*, 534 U.S. 316 (2002)) .  Accordingly, the Ordinance does not constitute an invalid prior restraint on speech merely because it lacks specific time limits.

The Plaintiff's arguments that the Ordinance is a prior restraint on speech lacks merit.  Accordingly, the Plaintiff's motion for summary judgment with respect to Counts I and II involving claims of prior restraint are due to be **DENIED** and the Defendant's motion for summary judgment **GRANTED**.

## IV.   The Regulation of Commercial Speech

The Plaintiff challenges the City of Trussville's regulation of commercial speech arguing that the City impermissibly favors some forms of commercial speech over others and that the City regulates more commercial speech than is justified by its legitimate interests.  The validity of a City's regulation of commercial speech is determined by the four-part test established in *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980).  Under *Central Hudson*:

> (1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading.  A restriction on otherwise protected commercial speech is valid only if it (2) seeks to

implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective.

*City of Morrow*, 112 F.3d at 1116.

There is no allegation that this case involves commercial speech that is either misleading or concerns unlawful activity.  Applying the second prong, the Ordinance advances a substantial government interest.  The purpose of the Ordinance is stated in section 1.0 as follows: "The purpose of these sign regulations is to provide minimum control of signs in Trussville to promote the health, safety, and general welfare by lessening hazards to pedestrians and vehicular traffic …."  "[It is] well settled that both traffic safety and aesthetics are substantial governmental goals." *See Messer v. City of Douglasville*, 975 F.2d 1505, 1510 (11th Cir. 1992).  The Ordinance directly accomplishes this interest by setting time, place, and manner restrictions on the signs throughout the city.  *See Metromedia*, 453 U.S. at 511 (regulation on signs directly relates to objective of traffic safety and aesthetics even where the regulation is underinclusive).

Lastly, the Ordinance is narrowly tailored.  It allows for a significant amount of commercial speech, subject only to time, place, and manner restrictions.  Furthermore, as with the Court analysis of the Plaintiff's prior restraint claim, the Court examines the Ordinance as qualified by the Court's determination to enjoin the

17

enforcement of section 1.0.  So viewed, the Ordinance is not impermissibly content-discriminatory and imposes no restriction, much less an undue restriction, on noncommercial speech.

Accordingly, the Ordinance is a constitutional regulation of commercial speech.  The Defendant's motion for summary judgment as to Counts V, VI, and VIII is due to be **GRANTED** and the Plaintiff's cross-motion on these counts **DENIED.**

## IV.    Scope of the Remedy

KH Outdoor's prayer for relief requests that the Court (1) permanently enjoin the City of Trussville from enforcing the Ordinance; (2) order Trussville to permit KH Outdoor to erect the signs at the locations requested in the permit applications submitted to the City on October 30, 2003; (3) order Trussville to provide any and all necessary documentation to the State of Alabama; (4) award damages; and (5) award attorney's fees.

As to KH Outdoor's requests for injunctive relief, the Court will grant them only in part.  The Court will enter an Order permanently enjoining the City of Trussville only from enforcing or applying the last proviso of section 1.0 of its Ordinance.  Enjoined from enforcing this provision, the Ordinance ceases to be unconstitutionally content-discriminatory.  Although the Ordinance will continue to regulate on the basis of content, well-established law permits a municipality to afford

noncommercial speech more protection than commercial speech.  *See Metromedia*, 453 U.S. at 514 ("[T]he city may distinguish between the relative value of different categories of commercial speech."); *Central Hudson*, 447 U.S. at 562-563 ("The Constitution … accords a lesser protection to commercial speech than to other constitutionally guaranteed expression. The protection available for a particular commercial expression turns on the nature both of the expression and of the governmental interests served by its regulation.") (citation omitted); *City of Morrow*, 112 F.3d at 1116 ("The Court has continued to observe, however, a distinction between commercial and noncommercial speech, holding that the former may be regulated in situations where the latter may not be.");  *F.T.C. v. Mainstream Mktg. Servs., Inc.*, 345 F.3d 850, 856 (10th Cir. 2003) ("[A] regulation drawing a line between commercial and non-commercial speech must have a reasonable fit with substantial governmental interests.").

It is well-established that the regulation of the time, place, and manner of commercial advertising is justified by a city's interest in traffic safety and aesthetics. *See Messer*, 975 F.2d at 1510 ("[It is] well settled that both traffic safety and aesthetics are substantial governmental goals.").  Because the offending portion of section 1.0 is severable from the remainder of the Ordinance and because the Ordinance does not constitute a prior restraint on speech, KH Outdoor has not

established the basis for an injunction against the Ordinance in its entirety.

The Court also will deny KH Outdoor's request for an Order authorizing it to erect the disputed signs. Even after the City is enjoined from enforcing the offending portion of section 1.0, KH Outdoor has not established its entitlement to erect the requested signs. Nowhere in the applications does KH Outdoor indicate whether the signs it seeks to erect will contain commercial or noncommercial content. Consequently, the Court has no basis for determining whether the proposed signs will be commercial in nature, and therefore regulated by the Ordinance, or whether they will be noncommercial, and therefore outside of the Ordinance's provisions. As a result, the remedy that this Court can give to KH Outdoor is confined to enjoining the enforcement of the offending portion of section 1.0 of the Ordinance so that KH Outdoor can resubmit its permit applications to the City of Trussville for evaluation under the Ordinance as altered by the injunction.

Neither party moved for summary judgment on the issue of actual damages. KH Outdoor's motion for nominal damages will be **GRANTED**. As for KH Outdoor's claim for attorney's fees, KH Outdoor may submit its application for fees and costs pursuant to Federal Rule of Civil Procedure 54(d)(2) at such time as judgment has been entered.

This opinion shall be carried out by a separate Order.

**DONE** and **ORDERED** this the 27th day of April, 2005.

**VIRGINIA EMERSON HOPKINS**
United States District Judge