UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **KH OUTDOOR, L.L.C.,** ) | |
| ) | |
| Plaintiff, ) | **CIVIL ACTION NO. CV-03-HS-3278-S** |
| ) | |
| v. ) | |
| ) | |
| **CITY OF TRUSSVILLE,** ) | |
| **ALABAMA,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This matter is before the court on Defendant's Motion for Summary Judgment (doc. 57) on Plaintiff's Claim for Compensatory Damages. The motion was opposed and briefed extensively. For the reasons articulated herein, Defendant's Motion for Summary Judgment is due to be **GRANTED**.

## FACTS AND PROCEDURAL HISTORY

The Plaintiff, KH Outdoor, LLC (hereinafter "KH Outdoor"), is a Georgia based out-door advertising company. On October 30, 2003, KH Outdoor submitted eleven applications to construct outdoor advertising signs at various locations within the Trussville, Alabama, city limits. On October 30, 2003, two of the applications

1

were rejected on the ground that they sought to erect signs outside of the Trussville city limits. However, this initial conclusion turned out to be mistaken, and the applications were resubmitted. On or about November 3, 2003, and November 14, 2003, the City denied each permit application, citing the Trussville City Ordinance (hereinafter the "Ordinance") regarding the public display of signs in Trussville. *See* Ordinance 200-03A-P.Z, Article XI-XII.

The following sections of the Trussville Ordinance were applied to KH Outdoor. Section 20.0 governs where billboards are allowed and sets regulations that they must conform to. The term "billboards" is defined in section 2.0 of the Ordinance. This provision necessarily applied in order to place KH Outdoor's applications under section 20.0. Section 4.0 is a list of signs that are exempt from the Ordinance's provisions. As exemptions to the application of the Ordinance, these provisions necessarily had to be considered as a threshold matter prior to applying the Ordinance at all. Section 3.0 is a set of generally applicable rules. Only section 3.0(O) actually applied to KH Outdoor's applications. Section 3.0(O) prohibits all off-premise signs except as permitted in section 20.0. Section 9.0 governs what signs can be erected in areas zoned as C-3 Tourist Commercial Districts. C-3 Tourist Commercial Districts are the only districts in which billboards can be erected, subject to section 20.0. Section 1.0 was not applied to KH Outdoor.

The denial letter that Trussville sent to KH Outdoor adequately states that its applications were denied because (1) pursuant to section 20.0, billboards are restricted to areas along interstate highways and KH Outdoor sought to erect nine billboards along several ordinary roads; (2) pursuant to section 20.0, billboards are not permitted to be within 1500 feet of each other and KH Outdoor sought to erect two billboards along Interstate 59 that were within 1500 feet of another billboard; and (3) one billboard was sought beyond Trussville's city limits.

On December 10, 2003, KH Outdoor commenced the instant civil action under 42 U.S.C.A. § 1983 alleging in thirteen counts that the Defendant City of Trussville's sign Ordinance is unconstitutional and that Trussville's denial of the permit applications violates KH Outdoor's rights under the First and Fourteenth Amendments of the United States Constitution.

KH Outdoor's Cross-Motion for Summary Judgment (doc. 19) sought a judgment in its favor on its claims, and requested injunctive relief, nominal damages, and attorney's fees under 42 U.S.C.A. § 1988 and under Alabama law.  In its Motion for Summary Judgment (doc. 12), the City of Trussville requested judgment on the grounds that (1) the Plaintiff lacks standing and (2) the Trussville sign ordinance is constitutional.

In the Memorandum Opinion (doc. 38) and Order (doc. 39) regarding the

Cross-Motions for Summary Judgment:

1) The court held that Section 1.0 of the Ordinance is unconstitutionally content-discriminatory and entered a permanent injunction barring the City of Trussville from applying or enforcing in any manner the provision of section 1.0 of the Ordinance that provides as follows: "If not otherwise stated, any sign not specifically permitted in a zoning district as provided under the applicable section, shall be prohibited in that district."[1]

2) The court denied the Plaintiff's motion for summary judgment with respect to claims involving prior restraint and granted the Defendant's motion for summary judgment .

3) The court held that the Ordinance is a permissive constitutional regulation of commercial speech.

---

[1] The court held that,

> Enjoined from enforcing this provision, the Ordinance ceases to be unconstitutionally content-discriminatory. Although the Ordinance will continue to regulate on the basis of content, well-established law permits a municipality to afford noncommercial speech more protection than commercial speech. Because the offending portion of section 1.0 is severable from the remainder of the Ordinance and because the Ordinance does not constitute a prior restraint on speech, KH Outdoor has not established the basis for an injunction against the Ordinance in its entirety.

*Memorandum of Opinion* (doc. 38). KH Outdoor was awarded nominal damages and given leave to resubmit its permit applications to the City of Trussville for evaluation under the Ordinance as altered by the injunction.

KH Outdoor argues that City of Trussville impermissibly acted when it denied KH Outdoor's sign permits; thus, that compensatory damages are appropriate in this case.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See *Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party

may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of any evidence in the record in support of a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the non-moving party's case. *Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561

(1992)).

## ANALYSIS

**I.  The plaintiffs have not suffered any "actual injury" and, as a result, cannot recover compensatory damages.**

The United States Supreme Court held that 42 U.S.C. § 1983 creates "a species of tort liability" in favor of persons who are deprived of rights, privileges, or immunities secured to them by the Constitution. *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042, 1047, 55 L.Ed. 2d 252 (1978). "Accordingly, when § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts." *Memphis Community School District v. Stachura*, 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed. 2d 247 (1986).

The case of *Carey v. Piphus* involved a suit by a high school student suspended from school for allegedly smoking marijuana; the student claimed that he was denied procedural due process because he was suspended without an opportunity to respond to the charges against him. The Court of Appeals for the Seventh Circuit held that even if the suspension was justified, the student could recover substantial compensatory damages due to the constitutionally insufficient procedure employed to suspend him from school. However, the Supreme Court reversed and held that the

student could recover compensatory damages only if he proved actual injury caused by the denial of his constitutional rights. The United States Supreme Court noted, "Rights, constitutional and otherwise, do not exist in a vacuum. Their purpose is to protect persons from injuries to particular interests …." *Id.* at 254. Where no injury is present no compensatory damages can be awarded. The United States Supreme Court stated that the constitutional right transgressed in *Carey* – the right to due process of law – is central to the United States system of ordered liberty. *See Stachura* at 2543. The Supreme Court nevertheless held that no compensatory damages could be awarded for violation of that right absent proof of actual injury. *Carey* stands for the proposition that an abstract value of a constitutional right may not form the basis for § 1983 compensatory damages.

> **A.   This court previously ruled that the plaintiff did not suffer an "actual injury" as a result of the offending section of the Ordinance.**

KH Outdoor argues, based on this court's prior holding in this case, that its "as applied" challenge to the Ordinance was successful because the court found a portion of Section 1.0 of the Ordinance to be offensive to the Constitution; therefore, KH Outdoor asserts that it is entitled to compensatory damages resulting from harm inflicted due to a violation of a Constitutional right. The court cannot find any basis for this argument in its Order or accompanying Memorandum Opinion on the

previous Motions for Summary Judgment (docs. 38, 39).

The court ruled that Section 1.0 is severable from and did not poison the other provisions of the Ordinance. The court specifically held that,

> KH Outdoor has not established its entitlement to erect the requested signs. Nowhere in the applications does KH Outdoor indicate whether the signs it seeks to erect will contain commercial or noncommercial content. Consequently, the Court has no basis for determining whether the proposed signs will be commercial in nature, and therefore regulated by the Ordinance, or whether they will be noncommercial, and therefore outside of the Ordinance's provisions. As a result, the remedy that this Court can give to KH Outdoor is confined to enjoining the enforcement of the offending portion of section 1.0 of the Ordinance so that KH Outdoor can resubmit its permit applications to the City of Trussville for evaluation under the Ordinance as altered by the injunction.

*Memorandum Opinion on the Motions for Summary Judgment* (doc. 38) at 20.

Because KH Outdoor's permit applications were denied under Section 20.0 and Section 2.0 of the Ordinance, and not under Section 1.0, the court holds that there is no "actual injury" to KH Outdoor as is required in *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042, 1047, 55 L.Ed. 2d 252 (1978), and holds that KH Outdoor cannot recover compensatory damages in this case. As a result, the defendant's Motion for Summary Judgment (doc. 57) is due to be granted.

**II.  Supposing that KH Outdoor suffered an "actual injury," it would be barred from recovering compensatory damages because the damages could not be calculated with "reasonable certainty" as is required under Alabama law.**

KH Outdoor argues that it is entitled to compensatory damages under Alabama law because its damages can be calculated with "reasonable certainty." While KH Outdoor correctly articulates the standard under Alabama law for the measure of compensatory damages for an unestablished business, it falls woefully short of that standard in the present case.

In accordance with Alabama law, damages may not be determined by mere speculation or conjecture, but evidence tending to show the extent of damages as a matter of just and reasonable inference is admissible. *American Life Ins. Co. v. Shell*, 90 So.2d 719, 722 (Ala. 1956). In so holding, the Alabama Supreme Court has relied heavily on the United States Supreme Court's decision in *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555 (1931). In *Story*, the Supreme Court held that to prevent a plaintiff from proving his damages simply because said damages cannot be proved with mathematical certainty would be "little less than legalized robbery." The Supreme Court was particularly persuaded by the case of *Allison v. Chandler*, 11 Mich. 542, 555 (1863), which held:

> But shall the injured party in an action of tort, which may happen to furnish *no* element of certainty, be allowed to recover no damages (or merely nominal), because he cannot show the exact amount with certainty, though he is ready to show, to the satisfaction of the jury, that he has suffered large damages by the injury? Certainty, it is true would thus be attained; but it would be the certainty of injustice.

*Story*, 282 U.S. at 563-64.

Alabama law authorizes recovery of anticipated profits of an unestablished business if proved with "reasonable certainty." *See Morgan v. South Central Bell Tele. Co.*, 466 So.2d 107, 115-16 (Ala. 1985). In *Paris v. Buckner Feed Mill, Inc.*, the Alabama Supreme Court held that:

> the loss of profits . . . must also be capable of ascertainment with reasonable, or sufficient, certainty, or there must be some basis on which a reasonable estimate of the amount of the profit can be made; absolute certainty is not called for or required.

*Paris*, 182 So.2d 880, 881 (Ala. 1966).

The facts of the case at bar present the court with a unique question of law under Alabama's "reasonable certainty" test. The line of Alabama cases share two common elements: (1) there is a contractual relationship among the parties; and (2) there is a similarly situated business or there are factual considerations beyond the realm of the purely hypothetical with which a jury could calculate compensatory damages with "reasonable certainty." Neither of these elements exist in the present case. KH Outdoor: (1) has no contractual relationship with Trussville; (2) has not offered evidence of a similarly situated business to that of KH Outdoor's proposed operation in Trussville whereby a jury could make comparisons and draw inferences as to an appropriate measure of damages; (3) relies on expert testimony that is provided by persons who are admittedly not experts in the area of operating a solely

noncommercial sign business;[2] and (4) provides no factual means by which a reasonable jury could measure the likelihood its business would be profitable. Alabama courts have yet to address a situation where these factors are present and a plaintiff with an unestablished business is seeking compensatory damages. Based on the line of Alabama cases analyzing "reasonable certainty," the court holds that KH Outdoor does not meet this standard.

### A. There is no contractual relationship between KH Outdoor and the City of Trussville nor did the actions of Trussville interfere with any contractual relationship involving KH Outdoor.

In *American Life Ins. Co. v. Shell,* 265 Ala. 306, 90 So.2d 719 (1956), the Alabama Supreme Court permitted the recovery of anticipated lost income by a newly established business. There, 16 days after plaintiff had entered into a business relationship with the underlying business, the relationship was terminated because of actions taken by the defendant. The plaintiff then sued the defendant, seeking to recover the income he had hoped to earn from his defunct business contract. There

---

[2] The experts employed by KH Outdoor own and operate sign businesses that operate by selling and leasing both commercial and noncommercial sign space. These experts draw clear distinctions between their hybrid businesses and KH Outdoor's proposed noncommercial only sign business and conclude that the two businesses, while both operate in the sales and leasing of sign space, are radically different entities and are virtually impossible to compare. Plaintiff's expert Hudgens testified that he has never attempted to operate a sign business solely for noncommercial reasons because he has never been forced to do so and that selling only to noncommercial advertisers would be more difficult as a large portion of the advertising marketplace is automatically eliminated. [M. Hudgens June 2005 Depo., p. 32]. Plaintiff's expert Miles came to the same conclusion as Hudgens. [R. Miles Depo., pp. 13-14, 28-29].

is no mention of evidence concerning any income that the plaintiff may have earned while his business relationship existed. Instead, the trial testimony focused on the income that the established underlying business generated while operating during the six months following the end of the business relationship with the plaintiff. Although the business relationship between the plaintiff and the underlying business was essentially unestablished and the damages testimony dealt with matters that did not occur during the time of the relationship, the Alabama Supreme Court affirmed the plaintiff's jury award based on lost anticipated income:

> [T]he [evidence] was admissible to give the jury a basis upon which the amount of plaintiff's loss could be estimated. If the testimony of the plaintiff was believed by the jury, the jury had the right to find that the defendants by their wrongful act destroyed the plaintiff's life insurance agency and having done this cannot then claim that the plaintiff cannot recover what he lost under the contract just because the very act of destruction by the defendants made it difficult for the plaintiff to prove what he would have made of the agency. It is true that damages may not be determined by mere speculation or conjecture, but evidence tending to show the extent of the damages as a matter of just and reasonable inference, should be admissible where the fact of damage has been proved.

265 Ala. at 311, 980 So.2d at 722.

In *Shell*, the court was presented with a situation where a business relationship had been established and one party breached a contract. The Alabama Supreme Court's explicit rationale for applying the "reasonable certainty" rule was its

recognition that to disallow damages for loss of reasonably certain future profits "would encourage <u>breach of contract</u> with new businesses." *Morgan v. South Central Bell Telephone Co.,* 466 So.2d 10, 116 (Ala.1985) (emphasis added). The line of Alabama cases analyzing the "reasonable certainty" rule in regard to an unestablished business have focused on allowing for damages against a defendant who was in breach of contract rather than, as in the instant case, awarding damages against a municipality for allegedly applying an unconstitutional ordinance and thereby interfering with the ability of an unestablished company to conduct business. Trussville was in no way contractually obligated to allow KH Outdoor to erect signs within the municipality nor did the denial result in lass to KH Outdoor as a result of any breach of contract with clients due to KH Outdoor's inability to erect signs.[3]

> **B.    There is no similarly situated business to KH Outdoor's proposed venture in Trussville, Alabama, nor is there a factual basis on which a reasonable jury could calculate compensatory damages.**

KH Outdoor's damages are too speculative to warrant consideration by a jury because there is no similarly situated business with which to compare to KH Outdoor.[4]  The Court of Appeals of Alabama affirmed a verdict awarding lost

---

[3]KH Outdoor admits to not having clients or prospective clients in the Trussville market. [M. Hudgens June 2005 Depo., pp. 24-25, 29].

[4]See *American Life Ins. Co. v. Shell,* 265 Ala. 306, 90 So.2d 719 (1956).  See also *Super Valu Stores, Inc. v. Peterson*, 506 So.2d 317 (Ala.1987) (a jury comparing an unestablished supermarket franchise business to similarly situated franchises to determine damages is proper);

anticipated income from a business relationship that was never established. *See Western Union Tel. Co. v. Tatum*, 49 So.2d 673, *cert. denied*, 255 Ala. 13, 49 So.2d 678 (1950). In *Tatum,* a shipping company sent a telegram to the plaintiff, offering him a position as master of a ship conditional on an immediate response. The defendant, Western Union, was tardy in delivering the telegram so that, when the plaintiff was finally able to make contact with the shipping company, he learned that the position had been filled. The plaintiff successfully sued Western Union, seeking to recover the anticipated lost income from his unestablished business relationship with the shipping company. The evidence established both the salary that the plaintiff would have earned from his unestablished business relationship and the terminable-at-will nature of the plaintiff's anticipated employment. In rejecting Western Union's argument that the damages flowing from the plaintiff's unestablished business relationship were too speculative to be "reasonably certain," the court stated, "Recovery should not be denied merely because such damages are difficult of ascertainment." *Id.* at 675. The Court of Appeals of Alabama also stated, "We think that the jury in the present case, relying on their 'good sense,' could reasonably infer

---

*Morgan v. South Central Bell Tel. Co.,* 466 So.2d 107 (Ala.1985) (Doctor's office telephone number and advertisement were negligently not published in the telephone book and the jury properly examined the difference between similarly situated businesses with published telephone numbers versus businesses without published telephone numbers to determine compensatory damages).

a reasonable probability of [plaintiff's] employment, and that such chance of employment had a reasonably substantial value, even though had [plaintiff] obtained the appointment as master the company would have had the right to discharge him at will." *Id*. at 676.

The facts of *Tatum* differ substantially from the present case and the ruling is likewise distinguishable. In *Tatum*, the plaintiff had the guarantee of a business relationship as well as a measurable possibility of gain despite the fact that the employer could terminate the plaintiff's employment at will. A jury measured the amount of loss to the plaintiff in *Tatum* by simply examining the salary of the position and applying that calculation to the average life of the position. On the other hand, KH Outdoor has offered evidence that it does not have clients or prospective clients. The amount of gain is impossible to measure given that <u>no evidence</u> was presented as to any similarly situated noncommercial-only sign business with which to compare KH Outdoor. In fact, KH Outdoor's experts admit that they have not attempted to operate a solely noncommercial sign enterprise due to the speculative and risky nature of the business.

KH Outdoor's argument, coupled with a lack of evidence of actual damages or damages that could be ascertained with "reasonable certainty," warrant a denial of the defendant's motion for summary judgment on the issue of compensatory damages.

The string of hypotheticals on which KH Outdoor would have the court rely is simply insufficient to pass the "reasonable certainty" test. KH Outdoor intends to erect only noncommercial signs. KH Outdoor has never operated a noncommercial-only sign business and has solicited no potential customers for the proposed operation in Trussville. KH Outdoor's experts have never operated a noncommercial-only sign business. There is no evidence that anyone has ever operated a profitable noncommercial-only sign business in any geographic market. KH Outdoor argues that, if it had been permitted to erect the noncommercial signs, there would have been business to sustain a profit over each of the years since being denied the sign permits by Trussville. There is no basis for this argument in the evidence before the court. These factors, when considered in their totality, fall short of the "reasonable certainty" rule and the present case is distinguishable from the Alabama cases analyzing this rule. As such, summary judgment is properly granted in favor of Trussville.

## **CONCLUSION**

For the reasons discussed herein, Defendant's Motion for Summary Judgment as to Compensatory Damages (doc. 57) is **GRANTED**. A separate Order will be entered consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this the 31st day of January, 2006.

                                              **VIRGINIA EMERSON HOPKINS**
                                              United States District Judge